# United States Court of Appeals

## For the First Circuit

No. 09-2667

CAROLINE DELIA,

Plaintiff, Appellant,

v.

VERIZON COMMUNICATIONS INC.,

Defendant, Appellee,

VERIZON INFORMATION SERVICES INC.; VERIZON SUPERPAGES;
IDEARC MEDIA CORP.; VERIZON DIRECTORIES SERVICES - EAST INC.,
n/k/a Idearc Media Services - East Inc.; MALVERN SMALLWOOD;

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

John A. Kiernan, with whom Bonner Kiernan Trebach & Crociata,
LLP was on brief, for appellant.
Windy R. Catino, with whom John D. Hughes, Thomas H. Winter
and Edwards Angell Palmer & Dodge, LLP were on brief, for appellee.

August 24, 2011

**HOWARD**, **Circuit Judge**.  This employment discrimination case presents a threshold question:  Was plaintiff-appellant Caroline DeLia the defendant's employee?  The district court answered in the negative and granted summary judgment to defendant-appellee Verizon Communications, Inc. on DeLia's state and federal statutory claims.  The court also granted summary judgment to Verizon on various common law claims.  After careful review of the record, we affirm.

## I.

The basis of this lawsuit was Caroline DeLia's claim that she was sexually harassed in the workplace by a co-worker, and that her employer responded inadequately.  Her complaint names as defendants Verizon Communications Inc., Verizon Directories Services - East Inc., n/k/a Idearc Media Services - East Inc. ("Idearc"), and the co-worker, Malvern Smallwood.  The complaint alleges sexual harassment, in violation of Mass. Gen. Laws ("MGL") ch. 151(B) and Title VII, 42 U.S.C. § 2000e-2; retaliation, in violation of Title VII; violation of the Americans with Disabilities Act; and state common law claims of negligent and intentional infliction of emotional distress, negligent failure to provide a safe working environment, and breach of contract.  Most of the counts were asserted against all defendants; the remainder

only against Idearc and Verizon Communications Inc. ("Verizon").[1] Verizon is the only defendant in this appeal.

## II.

We first sketch the background facts, which are undisputed unless otherwise indicated.[2] For roughly sixteen years, DeLia worked as an artist for Idearc. Known during almost all of DeLia's time of employment as Verizon Directories Services - East Inc., Idearc was a wholly-owned subsidiary of Verizon Directories Corp., which was itself a subsidiary of GTE Corp., itself a subsidiary of defendant Verizon. During the relevant time period, DeLia was based in Idearc's Middleton, Massachusetts, office, where she was involved in the production of art for advertisements to be included in telephone directories.

Defendant Smallwood was DeLia's supervisor in the Middleton office. DeLia worked in a cubicle next to Smallwood's

---

[1]We note a few housekeeping details. First, this suit was originally filed in Massachusetts Superior Court in January 2008, and removed to federal court shortly thereafter. Next, the operative Complaint is DeLia's Third Amended Complaint, which, for simplicity's sake, we refer to as "the complaint." Also, Verizon Directories Services - East Inc. changed its name to Idearc in October 2006. We use "Idearc" to avoid confusion. Finally, in April 2009, during the pendency of what had originally been a joint motion for summary judgment, Idearc filed a voluntary petition for bankruptcy and the case against it was stayed. See 11 U.S.C. § 362(a).

[2]We deem many of the facts recounted here as undisputed because DeLia disclaimed any knowledge about certain subjects, among them the corporate relationships of Verizon and its subsidiaries, including Idearc.

office. She alleged that over a period of several months in 2005 Smallwood engaged in several acts of harassment. The final alleged incident took place on September 12, 2005, upon Smallwood's return from vacation. In response to DeLia's handling of a customer problem while he was away, Smallwood screamed at her in a threatening way, and berated her such that she feared for her safety and left work. DeLia never returned to the Idearc office.

The next day, DeLia informed her union representative and her department's supervising manager that she could not go to the office because she feared Smallwood. Following an investigation by its human resource and security departments, Idearc was unable to substantiate DeLia's complaint and requested that she return to work. On October 11, 2005, DeLia reported Smallwood's behavior to Verizon's employment and ethics hotline. This triggered an investigation conducted by Verizon's Equal Employment Opportunity ("EEO") personnel, who conducted interviews, reported their findings, and made recommendations for corrective action. The EEO investigators determined that Smallwood had engaged in unprofessional conduct, albeit not sexual harassment. Idearc issued Smallwood a final warning, notifying him that further unprofessional conduct would result in his termination.[3]

---

[3]Idearc fired Smallwood after learning that he had transgressed the final warning by making inappropriate comments to a male co-worker.

Various attempts at finding DeLia suitable alternative working arrangements failed. In October 2005 she began receiving short-term disability benefits. When those expired one year later, DeLia began receiving long-term disability benefits. In addition, in October 2006, DeLia applied for Social Security Disability benefits. The application was approved in early 2007, effective March 2006. Both the long-term disability and Social Security approvals were premised on DeLia's demonstration that she had been unable to work since September 12, 2005. The final piece of the historical puzzle is that in November 2005, DeLia filed a charge with the Massachusetts Commission Against Discrimination (MCAD) in which she alleged a hostile work environment, sexual harassment and retaliation under state and federal employment laws. DeLia eventually removed the matter from the MCAD in order to file this action in state court. Verizon seasonably removed the action to federal court and subsequently moved for summary judgment. The district court granted Verizon's motion and this timely appeal followed.[4]

## III.

We review the district court's grant of summary judgment de novo. Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 77 (1st

---

[4]After granting the motion, the district court also granted Verizon's motion, under Fed. R. Civ. P. 54(b), for entry of a separate and final judgment. Thus, only the claims against Verizon are before us on appeal.

Cir. 2010). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As did the district court, we must take the record evidence in the light most favorable to DeLia, against whom summary judgment was entered, and draw all reasonable inferences in her favor. Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 779-80 (1st Cir. 2011). "A properly supported motion for summary judgment cannot be defeated by relying upon conclusory allegations, improbable references, acrimonious invective, or rank speculation." Ahearn v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010). Against this backdrop, we analyze DeLia's substantive legal claims.

A. Sexual Harassment, Retaliation & ADA Violation

DeLia claims that Smallwood's actions constituted sexual harassment for which Verizon is liable, asserting claims under both federal and Massachusetts law. 42 U.S.C. § 2000e; MGL ch. 151B. Verizon argues that it cannot be held liable under either statute because it is not DeLia's "employer," within the meaning of either statute. The district court agreed, and so do we.

Both Title VII and chapter 151B protect "employees" from harassment. See Alberty-Velez v. Corporacion de Puerto Rico Para La Difusion Publica, 361 F.3d 1, 6 (1st Cir. 2004) (Title VII); Modern Continental/Obayashi v. Mass. Comm'n Against Discrimination, 833 N.E. 2d 1130, 1138 (Mass. 2005) (ch. 151B). But neither the

-6-

federal nor state statutes contain definitions of "employee" that are of much use here.  See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (1992) (noting that statutory definition of "employee" in Title VII is "completely circular and explains nothing"); Comey v. Hill, 438 N.E. 2d 811, 814 (Mass. 1982) (recognizing that ch. 151B defines "'employer' and 'employee' only in the negative").[5]

We have construed Supreme Court decisions as establishing the proposition that "the terms 'employer' and 'employee' under Title VII are to be defined with reference to [ ] common law agency principles."  Lopez v. Massachusetts, 588 F.3d 69, 83 (1st Cir. 2009).  As a further refinement, we have held that "the common-law element of control [by the putative employer over the putative employee] is the principal guidepost that should be followed . . . ."  Id. at 84-85.  Similarly, we have noted that Massachusetts cases have determined that an employer can be defined by "'who has direction and control of the employee and to whom . . . [the employee] owe[s] obedience in respect of the performance of his work.'"  Roberts, 599 F.3d at 78 (1st Cir. 2010) (quoting Fleming

---

[5]Title VII defines "employee" as an "individual employed by an employer" and an "employer" as a "person who is engaged in an industry affecting commerce who employs fifteen or more persons . . . ."  42 U.S.C. § 2000e(b), 2000e(f).  Chapter 151B lists several types of entities and individuals who are not "employers" or "employees," respectively.  MGL ch. 151B § 1(5), (6).

v. Shaheen Bros., Inc., 881 N.E. 2d 1143, 1147 (Mass. App. Ct. 2008)).

In this case, DeLia claims there are "multiple" issues of material fact regarding Verizon's control of her workplace. First, citing an affidavit that she submitted to the district court, DeLia claims "she was an employee of Verizon for 16 years." Such a conclusory statement is of little utility in trying to determine the nature and extent of the parties' legal relationship. We do not doubt that DeLia may have thought Verizon was her employer, but her subjective belief alone is insufficient to create a triable issue of material fact. Cf. Wilson v. Moulison N. Corp., 639 F.3d 1, 10 (1st Cir. 2011) (rejecting plaintiff's subjective belief that co-worker was her supervisor, upon which claim against her employer was based); Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003) (observing that, in constructive discharge case, "an employee's subjective perceptions [of working conditions] do not govern").

Next, DeLia premises an employment relationship with Verizon on her assertion that she worked in Verizon's Middleton, Massachusetts, office and that her "key card," which electronically controlled access to the office, bore Verizon's logo. But, as to the building, DeLia does not dispute that it was Idearc's office, her own subjective belief notwithstanding. Nor is the logo on the key card -- indicating that the card itself is property of Verizon

-8-

-- probative of an employment relationship with Verizon. While the key may literally "control" access to the building, it bears no relevance to the type of control necessary to establish the identity of DeLia's employer. See Camacho v. P.R. Ports Auth., 369 F.3d 570, 576-78 (1st Cir. 2004) (rejecting claim that Port Authority was harbor pilots' employer even though it issued pilots' licenses because it "did not behave as pilots' employer in any practical sense").

DeLia next claims that Verizon's "Code of Business Conduct" ("the Code") established various terms of her employment, and thus makes her a Verizon employee. This claim does not withstand serious scrutiny. First, the Code explicitly states that "Verizon does not supervise or control the employment terms and conditions of its subsidiaries' employees." Next, the introductory text of the Code fails to support the argument presented. Under a section headed "Use of 'Verizon,'" the Code states, "Throughout this code, 'Verizon' refers to all subsidiaries and affiliates of Verizon Communications Inc., except Verizon Wireless (which has its own code)." Thus, whatever "terms of employment" the Code may be said to establish, the above language suggests nothing more than that those terms are just as likely to have been established by the subsidiary (in this case, Idearc) as by Verizon.

Additionally, DeLia points to the undisputed fact that Verizon administers her benefits as further support for her claim

that Verizon is her employer.  In so doing, she relies on Alberty-Velez, in which we noted that providing employee benefits is an indicum of employee status.  361 F.3d at 7.  This reliance is misplaced, however, because in Alberty-Velez the fact that the defendant did not pay benefits to the plaintiff suggested that the plaintiff was not an employee.  Id. at 8.  The same is true here.  While Verizon administered (but did not fund) DeLia's benefits, she was paid by Idearc, which maintained its own accounts, records and payroll, and which issued DeLia an annual W-2 form.  See Camacho, 369 F.3d at 577 (rejecting claim that entity was plaintiffs' employer where it did not provide benefits and did not treat plaintiffs as employees for tax purposes).[6]

DeLia's final contention is that a congratulatory letter that she received from Verizon's President and CEO in appreciation of her 15 years of service is an indication of Verizon's "control" because a fact-finder could determine that the authority to congratulate is co-extensive with the authority to terminate.  She provides no record support for this assertion, however.

DeLia argues, fairly enough, that her evidence should not be considered piecemeal.  See Dykes v. DePuy, Inc., 140 F.3d 31, 37 (1st Cir. 1998) ("all of the incidents of the relationship must be assessed and weighted with no one factor being decisive" (quoting

---

[6]Although, as DeLia points out, her pay stubs contain the Verizon logo, the name "Verizon Dir. Services - East Inc." (Idearc's former name) appears above the "authorized signature."

-10-

<u>Darden</u>, 503 U.S. at 324))).  But even taken together, DeLia has failed to demonstrate that Verizon had any control over the "manner and means" by which she performed her job.  <u>Alberty-Velez</u>, 361 F.3d at 7.

Our conclusion that Verizon is not DeLia's employer is also fatal to her claim for retaliation under Title VII. Similarly, her ADA claim that Verizon did not accommodate the disability brought about by her workplace experience suffers from the same legal defect.  <u>See</u> <u>Faiola</u> v. <u>APCO Graphics, Inc.</u>, 629 F.3d 43, 47 (1st Cir. 2010) (noting that accommodation claims requires plaintiff to establish that employer knew of her disability but did not reasonably accommodate it upon a request).

B.  <u>Infliction of Emotional Distress</u>

DeLia next argues that Verizon is responsible for intentional as well as negligent infliction of emotional distress.[7] These claims are waived.  Although DeLia's opening brief includes a section entitled "Verizon is Liable for its Independent Acts of Negligence," there is nothing of consequence in that section devoted to her emotional distress claims.[8]  Instead, the entire

---

[7]DeLia necessarily asserts these claims as an alternative to her statutory claims, as they would be barred by Massachusetts' workers compensation law if Verizon were her employer.  <u>Doe</u> v. <u>Purity Supreme, Inc.</u>, 664 N.E.2d 815, 818 (Mass. 1996).

[8]One sentence in DeLia's opening brief states that Verizon's negligent investigation caused her "economic and emotional injury." No more is said about the emotional distress claims.

-11-

section addresses only the efficacy of Verizon's investigation, which may only have some bearing on a different count. Even in her reply brief, after Verizon presented its waiver argument, Delia states only that "they have been preserved for appellate review by this Court as they were briefed by Verizon in its Motions for Summary Judgment . . . ." Suffice it to say, whether a claim was raised below is not the issue. An appellant bears the "obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." Harriman v. Hancock Cnty., 627 F.3d 22, 28 (1st Cir. 2010) (internal quotation marks omitted) (citing United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."))[9]

## C.  Failure to Provide a Safe Working Environment

Although originally styled as an allegation that Verizon negligently failed to provide a safe working environment, specifically, one free from harassment, DeLia's claim now appears to be that the Verizon EEO investigation was negligent. Although it is not entirely clear either that this theory was presented to the district court or that it is actionable, and the appellate

---

[9]This is not to say that raising the issue only in reply would have been sufficient. See Braintree Labs., Inc. v. Citigroup Global Mkts. Inc., 622 F.3d 36, 44 (1st Cir. 2010) ("The slight development in the reply brief does nothing to help matters, as arguments raised there for the first time come too late to be preserved on appeal.").

briefing is sparse, the theory stumbles in any event. First, DeLia fails to articulate how Verizon's investigation was negligent. Her brief states that four witnesses whom she disclosed were not interviewed by Idearc, but she then notes that they were interviewed by Verizon. She expounds in her reply brief, noting that the four female witnesses corroborated her version of events, that Smallwood issued a denial, and that she was told to return to work in close proximity to Smallwood. But she offers no argument as to how Verizon should have investigated differently.

Next, to the extent that the appellant takes issue with the resulting discipline meted out (or lack thereof), she nevertheless concedes in her brief that Idearc, not Verizon, responded to the information obtained during the investigation and imposed the corrective measures that she deems insufficient. Her claim thus fails on this ground as well.

Finally, the record indicates that DeLia did not contact Verizon's EEO until approximately one month after she left her job, yet she informed both her disability carrier and the Social Security Administration that she had earlier become permanently disabled as of her last day at work, September 12, 2005. Such a temporal landscape belies any connection between Verizon's allegedly negligent investigation and injury to DeLia.

D.  Breach of Contract

DeLia claims that the Code of Business Conduct, discussed earlier, formed a contract which Verizon breached by failing to provide an appropriate response to her complaint; a work environment free from harassment; "reasonable accommodation" as required by law; a safe and healthy work environment; and a workplace free of threatening or hostile behavior.

Under Massachusetts law, an employee handbook can, under some circumstances, form a binding contract.  O'Brien v. New England Tel. & Tel. Co., 664 N.E.2d 843 (Mass. 1996).  But DeLia's claim of breach of contract suffers from the same fatal flaw as several of her other claims.  Even assuming that the Code of Conduct formed a contract, and that certain contractual rights were breached, the alleged breach was committed by Idearc, not Verizon.  DeLia provides no support for her apparent theory that an employee can be a party to an employment contract with an entity other than her employer.  Therefore, her breach of contract claim fails as a matter of law.

**IV.**

The judgment of the district court is **affirmed.**

-14-